## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **KATHERINE LORENA HERDOIZA GUERRERO**, | |
| Plaintiff, | |
| v. | Civil Action No. 23-1020 (TSC) |
| **DEPARTMENT OF STATE**, *et al.*, | |
| Defendants. | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Katherine Lorena Herdoiza Guerrero has sued the U.S. Department of State,
U.S. Customs and Border Protection ("CBP"), and the heads of those agencies (collectively,
"Defendants"). She contends that the process leading to the denial of her visa application was
unlawful, and seeks a court order invalidating that process and vacating the denial. *See* Compl.
at 21–25, ECF No. 1. Defendants have moved to dismiss the Complaint under Federal Rules of
Civil Procedure 12(b)(1) and 12(b)(6). Defs.' Mot. to Dismiss Pl.'s Compl., ECF No. 6
("MTD"). For the reasons set forth below, the court will GRANT Defendants' Motion.

### I.    BACKGROUND

The Immigration and Nationality Act ("INA") governs the issuance of visas to foreign
nationals who seek to enter the United States on a permanent ("immigrant") or temporary
("nonimmigrant") basis. 8 U.S.C. § 1101 *et seq*. Within that framework, the "B-1" and "B-2"
nonimmigrant visa categories are intended for foreign nationals who reside abroad but intend to
"visit[] the United States temporarily for business or temporarily for pleasure." *Id.*

§ 1101(a)(15)(B).  This case concerns Plaintiff's efforts to obtain a B-1/B-2 visitor's visa.  At the motion to dismiss stage, the court assumes the truth of the following allegations.

Plaintiff is "a citizen and national of Ecuador who currently resides in Quito."  Compl. ¶ 43.  She "became a permanent resident of the United States in November 1994, based on her marriage to a U.S. citizen."  *Id.* ¶ 46.  Starting in 2000, however, she "returned to Ecuador to assume an increasingly critical role in her family's businesses," and in 2011 she realized that "her family and business obligations would prevent her from residing permanently in the United States" and so "relinquished her permanent residence" status.  *Id.* ¶¶ 46–48.  Between 2011 and 2016, Plaintiff continued to visit the United States using B-1/B-2 visitor visas and "had no issues" doing so.  *Id.* ¶¶ 52–53.

Plaintiff alleges that things changed on February 6, 2016, when she "traveled from Quito to the United States with her then-husband and three minor U.S. citizen children."  *Id.* ¶ 56.  Due to a "particularly harsh disagreement" before the flight, Plaintiff "did not sit with her husband" and "was unaware of what items he might have placed into his own or their children's baggage."  *Id.* ¶ 57.  Upon the family's arrival in the United States, CBP officials "discovered that he was carrying over $28,000 in currency," which he had not declared.  *Id.* ¶ 58.  Ultimately, he "pleaded guilty to failing to report and transporting currency in excess of $10,000," "was sentenced to time served (two days)[,] and forfeited the undeclared currency."  *Id.* ¶ 59.  Plaintiff "was never charged with any wrongdoing connected with this incident," but alleges that "[o]n information and belief, Defendant CBP acted in bad faith by placing derogatory notes in [her] immigration file" that have "undermined all subsequent attempts by Plaintiff to secure another visa."  *Id.* ¶¶ 60–62.  Plaintiff divorced her husband in August 2022.  *Id.* ¶ 63.

Beginning in December 2016, Plaintiff repeatedly sought to obtain new B-1/B-2 visitor's visas.  During her first interview, the consular officer said that "her visa could not be issued until she provided documents to confirm the disposition of her husband's case."  *Id.* ¶ 66.  When she returned several weeks later, the officer "refused any document Ms. Herdoiza presented, and simply informed her that she should no longer apply for any U.S. visa."  *Id.* ¶ 67.  He then "refused her pending B-1/B-2 visa request under Section 214(b) of the Immigration and Nationality Act."  *Id.*  Section 214(b) provides that every foreign national "shall be presumed to be an immigrant until he establishes to the satisfaction of the consular officer, at the time of application for a visa, . . . that he is entitled to a nonimmigrant status."  8 U.S.C. § 1184(b).  Thus, Plaintiff understood the "stated reason for denial" to be the officer's conclusion that "Plaintiff has the intent to reside in the United States."  *Id.* ¶ 75.

Plaintiff "applied for a B-1/B-2 visitor's visa three more times between January 2017 and November 2018" but "each associated interview proceeded in a nearly identical manner."  Compl. ¶ 69.

> The officer first inquired about her husband's business, then their business relationship, and finally the status of their marriage.  The officer would not accept any documents from Plaintiff, including documents from which the consular officer could verify that Ms. Herdoiza faced no charges as a result of her ex-husband's activities.  The officer would then not permit Ms. Herdoiza to offer any testimony on her behalf other than to respond to the officer's direct questioning.  Following each interview, the consular officer provided Ms. Herdoiza with a notice finding her ineligible for a nonimmigrant visa under INA Section 214(b).  . . .  Each time, the officer's denial notice came with a verbal warning never to apply for another U.S. visa in the future.

*Id.* ¶¶ 69–71.

In 2022, Plaintiff tried again, but her application was again denied.  Before her interview on October 14, she "retained Guidepost Solutions, a globally recognized investigations firm, to look into her business and personal affairs for any clue that might further explain the string of

visa denials, since her lack of ties to her husband's importation of currency did not in her view explain those denials." *Id.* ¶ 79.  The investigative report "uncovered no negative information about Ms. Herdoiza or any of her business affairs that might cause the U.S. government to warn against reapplying for a tourist visa," and "was included with counsel's submission to the Consulate," along with all other "requested information and documents." *Id.* ¶¶ 78–81.  But "[o]n information and belief," Plaintiff alleges that "the consular officer at the October 14, 2022, interview had not reviewed the material provided in advance to the consulate, nor did the officer take the time necessary to give consideration to this evidence when it was handed to her after she had refused the visa." *Id.* ¶ 82.

According to the Complaint, the "stated reason for denial" is "a pretextual reason for keeping Plaintiff from reentering the United States." *Id.* ¶ 75.  "On information and belief, the sole basis for the repeated denial of Ms. Herdoiza's visa requests is Defendant CBP's mishandling of the February 16, 2016, incident, which includes agency notes and flags visible to consular staff for the purpose of visa issuance." *Id.* ¶ 90.  Specifically, "Defendant CBP has continuously maintained derogatory information regarding the February 16, 2016, incident against Plaintiff since that date." *Id.* ¶ 92.  Correspondingly, "Defendant Department of State has accessed that derogatory information numerous times in the ensuing years" and, along with "reviewing officers[,] further acted in bad faith in the course of their consideration of Ms. Herdoiza's visa application by deliberately refusing to review relevant, probative information submitted to the consulate" when considering that application.  *Id.* ¶¶ 92–93.

Based on these asserted facts, Plaintiff claims that Defendants violated the INA, the Administrative Procedure Act ("APA"), the Due Process Clause, and the State Department's own regulations.  *Id.* ¶¶ 111–115, 116–119, 120–123, 129–32.  She asks the court to declare

unlawful the State Department's alleged failure to consider information she submitted in support of her 2022 visa application; to "vacate [her] recent visa refusals" and "direct Defendant State Department" to "redetermine her eligibility" after considering that information; and "instruct Defendant CBP to delete the inaccurate derogatory information in its database that pertains to her ex-husband, not to her." *Id.* at 25.

Defendants have moved to dismiss the Complaint on three grounds. First, that the named Defendants "either play no role in adjudicating her visa application or have already completed their role in the process," so the court "lacks subject matter jurisdiction over her claims." MTD at 4; *see id.* at 4–5. Second, that all of Plaintiff's claims are barred by the doctrine of consular nonreviewability. *Id.* at 5–9. And finally, that she has failed to plausibly plead a cognizable claim under the Due Process Clause. *Id.* at 9–10.[1]

## II.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff must establish that the court has subject matter jurisdiction over its claim. *Moms Against Mercury v. Food & Drug Admin.*, 483 F.3d 824, 828 (D.C. Cir. 2007). In evaluating such motions, courts "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). However, the court

---

[1] Plaintiff grounds her constitutional claim in the Due Process Clause of the Fourteenth Amendment. *See* Compl. ¶¶ 120–23. That Clause applies to the states, not the federal government. U.S. Const. amend XIV, § 1; *see Cutler v. U.S. Dep't of Health & Hum. Servs.*, 797 F.3d 1173, 1178 n.6 (D.C. Cir. 2015). Nonetheless, Defendants' Motion chooses to treat the claim as being properly raised under the Fifth Amendment's Due Process Clause, *see* MTD at 9 n.4, and the court will do the same, *Cutler*, 797 F.3d at 1178 n.6.

may consider "any documents either attached to or incorporated in the complaint[,] and matters of which [courts] may take judicial notice." *Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." But, as with a 12(b)(1) motion, courts "treat the complaint's factual allegations as true" and "grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quotation marks and citation omitted). That said, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. And a court need not accept as true "a legal conclusion couched as a factual allegation," nor "inferences . . . unsupported by the facts set out in the complaint." *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quotation omitted).

## III.   ANALYSIS

The court acknowledges the difficulties and frustration attendant to Plaintiff's situation as alleged, but it cannot grant the relief she seeks. The INA charges the Secretary of State "with the administration and the enforcement of . . . immigration and nationality laws relating to . . . the powers, duties, and functions of diplomatic and consular officers of the United States, except those powers, duties, and functions conferred upon the consular officers relating to the granting or refusal of visas." 8 U.S.C. § 1104(a). And it expressly delegates to consular officers the decision whether to issue immigrant and nonimmigrant visas. *Id.* § 1201(a). Accordingly, the D.C. Circuit has held that "[t]he INA confers upon consular officers exclusive authority to

review applications for visas, precluding even the Secretary of State from controlling their determinations." *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999); *see Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021). That exclusive authority covers "the granting, denying[,] and revoking of immigrant and non-immigrant visas." *Saavedra Bruno*, 197 F.3d at 1156; *see Baan Rao*, 985 F.3d at 1024.

The exclusive authority of consular officers to deny visa applications defeats the redressability element of Plaintiff's standing by denying Defendants authority to grant the relief she seeks. A complaint must "plausibly allege (1) a 'concrete,' 'particularized,' and 'actual or imminent' 'invasion of a legally protected interest' that is (2) 'fairly traceable to the challenged action of the defendant' and (3) 'likely' to be 'redressed by a favorable decision.'" *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 7–8 (D.D.C. 2022) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Thus, a plaintiff has "standing to proceed against each defendant only to the extent that an order from this Court compelling that defendant" to take the actions that the Complaint requests "would redress [the plaintiff's] alleged injur[y]." *Id.* at 9 (quotation omitted). Plaintiff has not shown that Defendants, as a matter of law, may provide that redress here. And no "further factual development," Mem. in Opp'n to Mot. to Dismiss ("Opp'n"), ECF No. 9 at 16, could transfer consular officers' exclusive legal authority over visa adjudication to Defendants.

The heart of Plaintiff's alleged injury stems from the denial of her visa application, which the named Defendants cannot reverse. The Complaint repeatedly emphasizes that her "inability to meet with business partners and wholesalers in the United States is causing serious and ongoing harms to her business," as well as impairing other "personal and professional" interests in the United States. Compl. ¶¶ 30, 54–55, 107. But Plaintiff has not sued the consular officer

who has the "exclusive authority . . . to grant[ or] deny" the visa that would permit her to visit
the United States. *Baan Rao*, 985 F.3d at 1024. Instead, she has sued other officials and
agencies, who are "preclude[ed]" from "controlling the[] determinations" of consular officers,
*id.*, like the Secretary of State, or who "had no role in adjudicating [her] application,"
*Munyaneza v. Blinken*, No. 21-cv-2778 (TSC), 2022 WL 4598629, at *2 (D.D.C. Sept. 30,
2022), like CBP. In that sense, Defendants are no better positioned to redress Plaintiff's injury
than the Secretaries of Transportation or Education would be. Because the law does not permit
them to "direct[] a particular *outcome* with respect to Plaintiff['s] visa adjudication[]," *Al-
Gharawy*, 617 F. Supp. 3d at 10, Defendants could not lawfully comply with a court order to
"vacate Ms. Herdoiza's recent visa refusals" and "redetermine her eligibility," Compl. at 25
(third prayer for relief), as that would effectively nullify the consular officers' denials.

The authorities that Plaintiff cites do not say otherwise. The APA's general provision for
suit against agencies and their head officials, 5 U.S.C. § 703, does not make any particular
agency or official capable of redressing a plaintiff's asserted injuries, *contra* Opp'n at 14. The
INA's delegation of immigration authority to the Secretary of State specifically excepts the
denial of visa applications. 8 U.S.C. § 1104(a); *contra* Opp'n at 14–15. And other courts in this
district have permitted suits against similar defendants only when they challenged a consular
officer's failure to act on or the delay of visa adjudications—not a consular officer's completed
decision on an application. *See, e.g.*, *Vulupala v. Barr*, 438 F. Supp. 3d 93, 100–01 (D.D.C.
2020) ("Granting or refusing a final visa application is a mandatory agency action. . . . Therefore,
an alleged failure to ['issue' or 'refuse' a completed visa application] within a reasonable period
of time is reviewable under the APA."); *Al-Gharawy*, 617 F. Supp. 3d at 10 ("No one disputes
that the INA bars the Secretary of State from directing a particular *outcome* with respect to

Plaintiffs' visa adjudications.  But nothing in *Baan Rao* or *Saavedra Bruno* precludes the Secretary" of State "from directing consular officers to conclude matters presented to them within a reasonable time." (formatting modified) (quotation omitted)).

In addition, Plaintiff insists that she only asks "Defendants to comply with their Constitutional, statutory, and regulatory obligations" and not for "the Secretary of State [to] re-adjudicate her visa."  Opp'n at 16.  Her Complaint says otherwise:  "Plaintiff hereby prays . . . [t]hat the Court . . . instruct[] Defendant to . . . redetermine her eligibility."  Compl. at 25. Indeed, only a re-adjudication of her application could redress her core injury—the inability to visit the United States to pursue personal and professional interests.  Compl. ¶¶ 30, 54–55, 107. To the extent that she also alleges procedural injuries, *see, e.g.*, *id.* ¶ 96 ("Defendant's actions injured Ms. Herdoiza by declining to give consideration to evidence she submitted in support of her visa application."), those claims "must be tethered to some concrete interest adversely affected by the procedural deprivation: '[A] procedural right *in vacuo* . . . is insufficient to create Article III standing.'"  *WildEarth Guardians v. Jewell*, 738 F.3d 298, 305 (D.C. Cir. 2013) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)).  Here, Plaintiff's concrete interest is in visiting the United States.  Because none of the Defendants have the authority to bring about that result by invalidating the denial of her visa applications, Plaintiff has not established that her injury would be redressed by a favorable decision here.

Plaintiff's resort to the substantive and procedural protections of the Due Process Clause do not change that result.  "A noncitizen does not have a right to a visa, or 'a constitutionally-protected interest in the procedures by which such visas are obtained.'"  *Khan v. Bitter*, No. CV 23-1576, 2024 WL 756643, at *8 (D.D.C. Feb. 23, 2024) (first citing *see Kleindienst v. Mandel*,

408 U.S. 753, 762 (1972); then quoting *Smirnov v. Clinton*, 806 F. Supp. 2d 1, 12 (D.D.C.

2011)).  Likewise, the Supreme Court

> long ago held that Congress is entitled to set the conditions for an alien's lawful entry into this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause. . . .  He therefore has no entitlement to procedural rights other than those afforded by statute.

*Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 1964 (2020).  As discussed above,

Plaintiff has identified no statutes that would permit Defendants to provide the relief she seeks.

She has therefore not plausibly alleged a Due Process violation.

## IV.    CONCLUSION

For these reasons, the court will GRANT Defendant's Motion to Dismiss, ECF No. 6.  A

corresponding Order will accompany this Memorandum Opinion.

Date: March 21, 2024

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge